# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

KEVIN SAM

VERSUS

STAFFORD BYRD, ET AL.

CIVIL ACTION

NO. 23-1485-JWD-EWD

## RULING AND ORDER

This matter comes before the Court on the *Motion for Partial Summary Judgment* (Doc. 33) ("*Defs. MSJ*") filed by Defendants Stafford Byrd ("Byrd") and the State of Louisiana through the Department of Public Safety and Corrections (the "State" or "DOC") (collectively, "Defendants"). Plaintiff Kevin Sam ("Plaintiff" or "Sam") opposes the motion, (Doc. 36), and Defendants have filed a reply, (Doc. 39). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, *Defs. MSJ* is denied.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was a DOC offender housed at Louisiana State Penitentiary ("LSP") at Angola on December 5, 2021. (*Answer* ¶ 4, Doc. 13.) Sam was housed at LSP at Cell Block A. (*Amended Petition for Damages/Use of Force* ("*Amended Petition*") ¶ 5, Doc. 1-8; Sam Dep. 44, Doc. 36-1 (verifying *Amended Petition*).)

On the same day, Byrd was employed by DOC at LSP. (*Id.* ¶ 5.) Byrd was working the cell blocks of Cell Block C. (*Am. Pet.* ¶ 5, Doc. 1-8.)

According to Sam, he was "walking off" the Recreation Yard of Cell Block C when Byrd called to him and said, "Bitch-ass N&*%$, I don't like the way you have been talking to these other officers!" (*Id.* ¶ 6 (cleaned up).) Sam testified that, on the day in question, Byrd did not want

to take him to the recreational yard because Byrd was tired and did not feel like moving from his chair. (Sam Dep. 20, Doc. 36-1.)

Byrd called A block (where Sam was housed), so Sam approached, was patted down by Byrd, and was told by Byrd that he was good. (*Id.* at 22.) Sam left, but Byrd called him back. (*Id.*) Byrd ordered Sam to get up against the wall of Cell Block C to be shook down. (*Am. Pet.* ¶ 8, Doc. 1-8.)

According to Sam, "[a]nd then [Byrd] just went right with a blow to [Sam's] face and saying, I got you now." (Sam Dep. 22, Doc. 36-1.) Byrd's right hand hit Sam to the left side of his face with his keys. (*Id.* at 23–24.) Sam fell back, but Byrd continued hitting him. (*Id.*) Sam fell over the ice chest and hit his head, but Byrd came back down on him and started punching him in the face while Sam was on the ground. (*Id.* at 24–25.) Byrd punched him three times. (*Id.* at 26; *see also Am. Pet.* ¶ 9, Doc. 1-8.) Sam was not resisting, was not being disobedient, and was not being an aggressor. (*Am. Pet.* ¶ 10, Doc. 1-8.)

Lt. Anderson saved Sam in that Anderson grabbed Byrd off of him. (Sam Dep. 26, Doc. 36-1.) Sam had blood on his face, and his teeth were knocked out. (*Id.* at 30.) He also had to have surgery for his eye which necessitated an artificial lens and medication. (*Id.* at 14, 38.)

On October 12, 2022, Plaintiff filed suit in state court, (Doc. 1-3), and later filed his *Amended Petition* (Doc. 1-8). The action was removed to this Court. (Doc. 1.)

In his *Amended Petition*, Plaintiff alleges that he was subjected to excessive force by Defendant Byrd on December 5, 2021. (Defs.' *Statement of Uncontested Material Fact* ("*SUMF*") ¶ 1, Doc. 33-1; Pl.'s *Response to* [*SUMF*] ¶ 1, Doc. 36-5 (admitted).)[1] Further, in the *Amended Petition*, Plaintiff asserts that the alleged excessive force by Byrd also constituted

---

[1] Hereafter, when the *SUMF* is cited alone, then that fact is either admitted or denied in such a way as to be deemed admitted. *See* M.D. La. Civ. R. 56(c), (f).

"battery/negligence" and that the State is vicariously liable for the alleged "tortious acts" of Byrd pursuant to the doctrine of *respondeat superior*. (*SUMF* ¶ 2, Doc. 33-1.)

On April 24, 2025, Plaintiff filed a *Motion for Partial Summary Judgment* (Doc. 31) ("*Pl. MSJ*") in which he affirmatively stated that the only claim against the State is for vicarious liability relative to the state law battery claim, and that the allegations within his lawsuit were only for intentional misconduct. (*Id.* ¶ 4.) However, Plaintiff also seeks partial summary judgment on the defense of comparative fault, arguing that (1) comparative fault does not apply to federal constitutional claims, and (2) more importantly, "defendants have no evidence to support any allegation of third party or comparative fault." (Doc. 31-2 at 10–11.) *Pl. MSJ* will be taken up in due course.

On April 25, 2025, Defendants filed the instant motion seeking partial summary judgment on some of Plaintiff's claims. (Doc. 33.) Some of Defendants' arguments are difficult to decipher, as the section headings of Defendant's brief have been scrambled, either by Defendants before or during filing or on the Court's end by Court staff on CM/ECF. (*See* Doc. 33-2 at 2–5.) In any event, Defendants appear to argue: (1) Plaintiff has no claim for vicarious liability against the State for any constitutional violation, (*id.* at 3); (2) Plaintiff has made a judicial admission that he seeks to recover only for a battery, so his negligence claim should be dismissed, (*id.* at 3–4); and (3) the State is not vicariously liable for the intentional torts of Byrd, so Plaintiff's *respondent superior* claim against the State must be dismissed, (*id.* at 4–5).

## II.    SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Thus, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.")). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (cleaned up). The non-mover's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (cleaned up).

Additionally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins,*

*Inc.*, 953 F.2d 909, 916 (5th Cir. 1992). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (citing, *inter alia*, *Ragas*, 136 F.3d at 458). *See also Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion. Indeed, even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor. Or, the non-moving party can defeat the motion by demonstrating that the evidence tendered by the moving party is itself laced with contradictions of [material] fact.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (cleaned up).

## III.  DISCUSSION

### A.  *Respondeat Superior* Claim as to Constitutional Violations

Defendants first argue that Plaintiff's judicial admissions mean that he has no claim for vicarious liability for constitutional violations. (Doc. 33-2 at 3.) Plaintiff responds, "As set forth in the Plaintiff's summary judgment [RD31], there is no respondeat superior pled on the federal

5

constitutional claims." (Doc. 36 at 2.) Defendants reply that, given Plaintiff's concessions, any claim that the State is vicariously liable for the constitutional violations must be dismissed. (Doc. 39 at 2.)

The Court will deny the motion on this issue. While the *Amended Petition* is not a model of clarity on this point, (*see Am. Pet.* ¶ 43, Doc. 1-8), Plaintiff unequivocally states in his *Pl. MSJ* that he "asserted a claim for *respondeat superior* on the state law claims against the State." (Doc. 31 ¶ 1.) Further, Plaintiff also acknowledges in his opposition to the instant motion that "there is no respondeat superior pled on the federal constitutional claims." (Doc. 36 at 2.) And this is, of course, not controversial. *See, e.g.*, *Skinner v. Ard*, 519 F. Supp. 3d 301, 312 (M.D. La. 2021) (deGravelles, J.) ("Section 1983 offers no *respondeat superior* liability." (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Thus, because Defendants seek to dismiss a claim that is in fact not made, *Defs. MSJ* will be denied as moot on this issue.

### B. Negligence Claim

#### 1. Parties' Arguments

Defendants next contend that Plaintiff made a judicial admission in *Pl. MSJ* that his sole claim against the State for vicarious liability is for Byrd's alleged battery. (Doc. 33-2.) Thus, say Defendants, Plaintiff has waived his claim for negligence, and this claim should be dismissed. (Doc. 33-2 at 4.) However, Defendants cite no law to support this argument.

Plaintiff's opposition is confusing at best in that the only real reference to his negligence claims is in the following statement, "The respondeat superior claim immediate follows the negligence claims" in the *Amended Petition*. (Doc. 36 at 2.) Elsewhere, Plaintiff says that "the DOC/LSP are answerable for the battery and assault by . . . Byrd under a theory of vicarious liability." (*Id.* at 5.)

6

In reply, Defendants assert: "Plaintiff's opposition memorandum does not address his apparent abandonment of his negligence claims, as raised by Defendants. Instead, Plaintiff has only doubled-down that he has pled a battery by Defendant Byrd, not negligence – despite its invocation in his [*Amended Petition*]." (Doc. 39 at 1.) Thus, Defendants argue, the negligence claim should be dismissed. (*Id.*)

## 2.  Law and Analysis

Having carefully considered the matter, the Court will deny *Defs. MSJ* on this issue. In short, the Court finds that Plaintiff's claim is not barred because of waiver or judicial admission.

First, this Court has recognized that "when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal" and that "[b]y analogy, failure to brief an argument in the district court waives that argument in that court." *Payton v. Town of Maringouin*, No. CV 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022) (citing *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.)). In addition, "[t]o avoid waiver, a party must identify relevant legal standards and 'any relevant Fifth Circuit cases,'" *id.* (quoting *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016)), and "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones[,]" *id.* (quoting *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)).

Thus, while Plaintiff's opposition on this point is weak, Defendants waived the issue by providing no legal authority for why or how Plaintiff made a judicial admission and by giving the

matter only a barebones treatment. Without more, the Court cannot find that Plaintiff waived his negligence claim.

Likewise, even if this Court analyzed the merits of Defendants' argument, the Court would reject it. As the Eastern District of Louisiana has explained:

> A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "A judicial admission 'has the effect of withdrawing a *fact* from contention.'" *Blankenship v. Buenger*, 653 F. App'x 330, 335 (5th Cir. 2016) (quoting *Martinez*, 244 F.3d at 476) (emphasis in original). Accordingly, judicial admissions generally concern issues of fact and are inapplicable to questions of law. *See Blankenship*, 653 F. App'x at 335 & n.15. "To qualify as a judicial admission, the statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 n.2 (5th Cir. 2014) (quoting *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001)). Courts retain discretion to treat statements in briefs as judicial admissions, *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990), as well as to relieve a party of the binding consequences of its judicial admission where justice requires. *See, e.g.*, *Kiln Underwriting, Ltd. v. Jesuit High Sch. of New Orleans*, 2008 WL 4724390, at *12 (E.D. La. Oct. 24, 2008) (even if statements were construed as judicial admissions, binding effect waived for counsel's "honest mistake" and lack of prejudice to opposing party). . . . *See Buenger*, 653 F. App'x at 335 n.15 ("The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case.") (quoting *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972)).

*In re TK Boat Rentals, LLC*, 411 F. Supp. 3d 351, 368 (E.D. La. 2019)

Applying this standard, Defendants' argument fails for a number of reasons. First, Plaintiff seeks a judicial admission about a legal theory, not a fact. On that ground alone, the Court could deny *Defs. MSJ.*

Second, Plaintiff made no "deliberate, clear, and unequivocal statement" that he was abandoning his negligence claim; to the contrary, in his *Pl. MSJ* (where the alleged admission was made), Plaintiff also sought partial summary judgment on the defense of comparative fault, in part on the ground that "defendants have no evidence to support any allegation of third party or comparative fault." (Doc. 31-2 at 10–11.) The only reasonable inference from Plaintiff's position is that he intended to maintain his negligence claim. At the very least, Plaintiff made no "deliberate, clear, and unequivocal statement."

And third, even if Plaintiff had made a judicial admission, "[c]ourts retain discretion . . . to relieve a party of the binding consequences of its judicial admission where justice requires," *Boat Rentals*, 411 F. Supp. 3d at 368, and the Court would do so here. Any alleged waiver of Plaintiff's negligence claim appears to be an honest mistake, and Defendants have shown no prejudice in allowing this issue to proceed to trial.

For all these reasons, the Court finds that Plaintiff has not waived his negligence claim. *Defs. MSJ* is denied on this issue.

### C. *Respondeat Superior* Claim as to Battery

#### 1. *Parties' Arguments*

Defendants' final argument is that the State is not vicariously liable for Byrd's battery. (Doc. 33-2 at 4–5.) While the incident occurred during work hours and at Byrd's place of employment, Byrd's conduct was motivated by purely personal reasons. (*Id.*) Defendant analogizes the case to *Dickerson v. Piccadilly Restaurants, Inc.*, 1999-2633 (La. App. 1 Cir. 12/22/00), 785 So. 2d 842, 845, where the appellate court purportedly affirmed a summary judgment in an employer's favor when one co-worker stabbed another co-worker for purely personal reasons. (*Id.* at 5.)

Plaintiff responds that Byrd was, at all relevant times, an employee of the State acting in the course and scope of his employment, and thus is vicariously liable for the battery. (Doc. 36 at 5.) Plaintiff highlights the standard for a battery claim against a police officer under Louisiana law and cites numerous cases in which law enforcement officers of some kind were found vicariously liable for batteries by an officer, including sexual abuse. (*Id.* at 6–8 (citing, *inter alia*, *Ross v. Sheriff of Lafourche Par.*, 479 So. 2d 506, 511 (La. App. 1st Cir. 1985); *Latullas v. State*, 94-2049 (La. App. 1 Cir. 6/23/95), 658 So. 2d 800, 803–04; *Thompson v. France*, No. CV 20-1842, 2020 WL 5761188, at *3 (E.D. La. Sept. 28, 2020) (Barbier, J.)).) Plaintiff also distinguishes *Dickerson* on the grounds that it "did not involve a special relationship that exists between a correctional officer and an inmate or a police officer and a private citizen, where one has authority over the other described as 'control and supervision.'" (*Id.* at 8–9.)

In reply, Defendants assert that the motivation of the employee is determinative. (Doc. 39 at 1–2.) Here, say Defendants, Byrd committed the battery because of a "personal grievance," and his deposition confirms that. (*Id.* at 2.) Since the tort is not employment-related, there is no vicarious liability. (*Id.*)

### 2. *Applicable Law*

"Under La. Civ. Code art. 2320, an employer may be held vicariously liable for the intentional torts committed by its employees when those acts occur within the course and scope of his employment." *Thompson*, 2020 WL 5761188, at *3 (citing *Lamkin v. Brooks*, 498 So.2d 1068 (La. 1986)). "The Louisiana Supreme Court has held that employers are liable for the conduct of their employees when the conduct was so closely connected to the 'time, place, and causation [of] his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business.'" *Id.* (quoting *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974)).

*LeBrane* identified four factors to determine if an employer should be liable for its employee's tortious acts: "(1) whether the tortious act was primarily employment-rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment." *Latullas*, 658 So. 2d at 804 (citing *LeBrane*, 292 So. 2d 216). All factors need not be met for vicarious liability to be found, and "each case must be looked at on its own merits." *Id.* (citing, inter alia, *Miller v. Keating*, 349 So. 2d 265, 268–69 (La. 1977)).

"It is well settled, however, that an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." *Id.* (collecting cases) (quotations omitted). "Vicarious liability will attach only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objectives." *Id.* (citations omitted).

Nevertheless, "[a]s the [Louisiana] supreme court stated . . . :"

> The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. So also, the act may be found to be in the service if not only the manner of acting but the act itself is done largely for the servant's purposes.

*Id.* at 805 (quoting *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 477 (La. 1990) (citations omitted)). *See also Thompson*, 2020 WL 5761188, at *3 ("if the employee's position 'actuates' the employee to 'any appreciable extent,' the employer will be liable for that act." (quoting *Ermert,* 559 So. 2d at 477).

11

### 3. *Analysis*

Having carefully considered the matter, the Court will deny *Defs. MSJ* on this issue. In sum, a reasonable juror could conclude that Byrd was in the course and scope of employment and that the State is thus liable for his alleged intentional misconduct.

Specifically, a reasonable jury could conclude that a majority of the *LeBrane* factors weigh in Plaintiff's favor, when construing the evidence in a light most favorable to Plaintiff and drawing reasonable inferences in his favor. Plaintiff presents evidence that Byrd's personal grievance was "reasonably incidental to the performance of [Byrd's] duties." *See Lattulas*, 658 So. 2d at 804. Bryd acted in part because he did not "like the way [Sam] [had] been talking to these other officers![ ]." (*Am. Pet.* ¶ 6, Doc. 1-8; Sam Dep. 44, Doc. 36-1 (verifying *Am. Pet.*).) Moreover, Byrd also appears to have been motivated in part by the fact that he did not want to take Plaintiff to the recreational yard because Byrd was tired and did not feel like moving from his chair. (Sam Dep. 20, Doc. 36-1.) That is, a reasonable inference is that Byrd did not feel like performing his assigned job duties, and he took that out on Plaintiff. Additionally, before the alleged beating took place, Byrd called Sam back and ordered Sam to get up against the wall of Cell Block C to be "shook down." (*Am. Pet.* ¶ 8, Doc. 1-8.) Thus, a jury could also conclude that "the violence was reasonably incidental to the performance of [Byrd's] duties," as the battery closely followed an order with which Plaintiff had to comply. *See Lattulas*, 658 So. 2d at 804. And, of course, Byrd's alleged misconduct happened on the State's premises and during the hours of employment. *Id.* Thus, contrary to Defendants' arguments, a reasonable factfinder could conclude that, under the *LeBrane* factors, Byrd's tort "was so closely connected to the 'time, place, and causation [of] his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business." *Thompson*, 2020 WL 5761188, at *3 (quoting *LeBrane*, 292 So. 2d at 218).

Equally important, vicarious liability is appropriate "if the employee's position 'actuates' the employee to '*any* appreciable extent.'" *Id.* (emphasis added) (quoting *Ermert,* 559 So. 2d at 477). A reasonable jury could conclude from the above facts that this standard is met.

Numerous cases support this conclusion. For example, in *Thompson*, the plaintiff was an inmate at a sheriff jail, and he was purportedly abused sexually by the defendant, a road crew supervisor with a sheriff's office, "while under his supervision pursuant to his employment. [Defendant] was allegedly able to coerce Plaintiff into 'allowing' the sexual abuse by threatening Plaintiff with his apparent authority." *Thompson*, 2020 WL 5761188, at *1, *3. Thus, the guard "was actuated by Tangipahoa Parish through his control and supervision of Plaintiff, and [the defendant's] opportunity to commit the sexual abuse was derived directly from his apparent authority over Plaintiff." *Id.* at *3.

*Thompson* relied on *Latallus*, where the Louisiana First Circuit reversed the trial court's finding that the State was not vicariously liable for a guard's rape of a female inmate. 658 So. 3d at 804–07. The appellate court reasoned that, because of his authority, the guard "was able to separate [the plaintiff] from her fellow inmates, and commit the act of rape." *Id*. at 804.

> Even though the rape itself was totally unauthorized by Lt. Brown's employer, and motivated by Lt. Brown's personal desires, the rape nevertheless occurred while he was at least partly actuated by his purpose of acting for his employer in the control and supervision of inmates, and it was through these duties that this opportunity arose.

*Id.* at 804–805. Thus, the State was vicariously liable for the guard's misconduct. *Id.* at 805.

The same reasoning applies here. The alleged battery took place while Byrd was "acting for his employer in the control and supervision of inmates, and it was through these duties that this opportunity arose." *Id.* at 804–805; *see also Thompson*, 2020 WL 5761188, at *3; *see also Dew v. Tallulah Water Co*., No. 3:19-CV-01489, 2021 WL 2152548, at *3 (W.D. La. Apr. 23, 2021),

*appeal denied, judgment aff'd*, No. 3:19-CV-01489, 2021 WL 2153226 (W.D. La. May 14, 2021) (recognizing that, under Louisiana state law, if the employe's acts are within the course and scope of employment, "a municipality may be held vicariously liable for the excessive use of force by a police officer effecting an arrest." (collecting case, including *LeBraine*, *Thompson*, and *Latullus*)). Because Plaintiff has established a question of fact on this issue, *Def. MSJ* will be denied.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment* (Doc. 33) filed by Defendants Stafford Byrd and the State of Louisiana through the Department of Public Safety and Corrections is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>November 10, 2025</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**