# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

KEVIN SAM

                                      CIVIL ACTION

VERSUS

                                      NO. 23-1485-JWD-EWD

STAFFORD BYRD, ET AL.

## RULING AND ORDER

This matter comes before the Court on the *Motion for Partial Summary Judgment* (Doc. 31) ("*Pl. MSJ*") filed by Plaintiff Kevin Sam ("Plaintiff" or "Sam"). Defendants Stafford Byrd ("Byrd") and the State of Louisiana through the Department of Public Safety and Corrections ("State" or "DOC") (collectively, "Defendants") oppose the motion, (Doc. 37), and Plaintiff has filed a reply, (Doc. 38). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the party and is prepared to rule. For the following reasons, Plaintiff's motion is granted in part and denied in part.

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was a DOC offender housed at Louisiana State Penitentiary ("LSP") at Angola on December 5, 2021. (*Answer* ¶ 4, Doc. 13.) On the same day, Byrd was employed by DOC at LSP. (*Id.* ¶ 5.)

Plaintiff claims that Byrd severely and unnecessarily beat him without provocation or any resistance by Sam. (*Ruling and Order*, Doc. 47 at 1–3.) Plaintiff brings claims against Byrd for (1) excessive force in violation of the Eighth Amendment under 42 U.S.C. § 1983, and (2) state law claims of battery and negligence. (*Am. Pet.* ¶¶ 35–42, Doc. 1-8.) Plaintiff also alleges that the State is vicariously liable for the state law torts of Byrd. (*Id.* ¶¶ 43.)

Plaintiff's testimony as to what happened is recounted in the Court's ruling on Defendants' *Motion for Partial Summary Judgment* (Doc. 33) ("*Defs. MSJ*").[1] That version need not be repeated in full here.

Defendants, of course, provide a different account of what happened, and that is more relevant to the instant motion. Specifically, Byrd claims that, on December 5, 2021, his job duties included conducting shake down searches of offenders coming off the Cell Block D recreation Yard. (Byrd Aff. ¶ 3, Doc. 37-2.) At about 3:15 p.m., he was conducting such searches and attempted to do so on Sam. (*Id.* ¶ 4.) Byrd says he ordered Sam to submit to a shake down search, but Sam refused. (*Id.* ¶ 5.) Byrd ordered him to submit to a search again, and Sam again refused, stating, "You ain't about to pat me down, you bitch ass n####." (*Id.* ¶ 6.)

Byrd tried to conduct the shake down search by patting Sam down, but Sam pulled away from his attempt to reach him. (*Id.* ¶¶ 7–8.) Byrd grabbed Sam by his arm in an effort to restrain him and obtain his compliance with the search. (*Id.* ¶ 8.) Sam tried to pull himself free of Byrd's grip, so Byrd tried to end Sam's resistance by bringing Sam to the ground so he could be placed in mechanical restraints. (*Id.* ¶¶ 9–10.)

Lt. Walker assisted Byrd in applying those restraints once Plaintiff was on the ground. (*Id.* ¶ 11.) After they applied the restraints, Bryd and Walker searched Sam and brought him to Cell Block D. (*Id.* ¶ 12.) Thereafter, Byrd reported to medical personnel for evaluation and was cleared fit to return to duty. (*Id.* ¶ 13.)

Byrd avers, "At no point in [his] interaction with . . . Sam on December 5, 2021, did [Byrd] observe any physical injury to him, and he did not voice any complaint of injury to [Byrd]." (*Id.* ¶

---

[1] The Court notes the Plaintiff provides an account of what happened in his *Statement of Undisputed Material Facts Offered in Relation to* [*Pl. MSJ*] (Doc. 31-3) ("*SUMF*"). However, as Defendants point out, Plaintiff provides almost no record citations in this document. This deficiency will be discussed further below.

14.) Further, "[a]t no point in [his] interaction with . . . Sam on [that day] did [Byrd] punch him or otherwise strike him with [his] fist or any other implement." (*Id.* ¶ 15.)

Defendants also submit some of Plaintiff's medical records. On December 5, 2021, the day of the incident, Plaintiff sought treatment alleging he got hit in the head and eye. (Doc. 37-3 at 4.) The provider reported "0 bruising 0 swelling 0 trauma." (*Id.*) Plaintiff was not seen again until December 8, 2021, (3 days later), during which time he got "beat up" and "hit in the eye," and he had "bruising" and "swelling." (*Id.* at 3.) Plaintiff was then seen again on December 11, 2021, at which time he showed 0 visible signs of trauma, "refused to be assessed" and "voice[d] no medical complaints at this time." (*Id.* at 2.)

Plaintiff now files the instant motion seeking partial summary judgment on some of Defendants' affirmative defenses. (Doc. 31 at 1.) Specifically, Plaintiff seeks dismissal of the following defenses: (1) qualified immunity; (2) denial of liability; (3) comparative fault; (4) failure to mitigate; (5) good faith; (6) discretionary immunity under La. R.S. § 9:2798.1; and (7) the statutory cap under La. R.S. § 13:5106. (*Id.* at 1–2.)

## II.   SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Thus, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.")). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (cleaned up). The non-mover's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (cleaned up).

Additionally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (quoting, *inter alia*, *Ragas*, 136 F.3d at 458). *See also Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case . . . be

searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion. Indeed, even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor. Or, the non-moving party can defeat the motion by demonstrating that the evidence tendered by the moving party is itself laced with contradictions of [material] fact.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (cleaned up).

## III.    DISCUSSION

### A.  Preliminary Note

Defendants raise the point that Plaintiff largely does not support his *SUMF* with any citations to record documents. (Doc. 37 at 3.) Thus, say Defendants, the Court should disregard most of this submission. (*Id.*) Plaintiff responds that he does not have the burden of proof on affirmative defenses and need only point to a lack of proof by Defendants. (Doc. 38 at 2.)

Both sides make fair points. Defendants are correct that Plaintiff's *SUMF* violates Local Civil Rule 56; this rule provides in relevant part:

> An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

M.D. La. Civ. R. 56(f). Thus, the Court may disregard any unsupported facts.

Plaintiff says that he does not bear the burden of proving affirmative defenses. It is certainly true that "[a]n affirmative defense places the burden of proof on the party pleading it." *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 643 (5th Cir. 2024) (quoting *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004)). And, as stated above, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease*, 915 F.3d at 997 (citation omitted). Thus, Sam makes a fair point that he "may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citation omitted).

But, there are a few problems with Plaintiff's position. First, "once the defense of qualified immunity has been raised, *the plaintiff has the burden* of demonstrating that '(1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time.'" *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023) (emphasis added) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc))).[2] Thus, as to this specific defense, Plaintiff has the burden, and he must bring forward evidence to support his claim. Second, more broadly speaking, Plaintiff cites no authority for the proposition that he is relieved of his obligations to comply with the Local Rules in situations such as these.

---

[2] The Court finds it highly doubtful that a litigator as seasoned as Plaintiff's counsel, who has probably tried over ten § 1983 cases before undersigned, would not know that her client has the burden of overcoming qualified immunity.

Perhaps recognizing this problem, Plaintiff attempts to cure his deficient filing by attaching his deposition, an employee manual, and a corrected *SUMF* to his reply memorandum. (Docs. 38-1, 38-2, 38-3, and 38-4). The Court has discretion to consider new evidence filed with a reply, depending on the circumstances of the case, including its timing, the existing litigation posture, and whether the non-movant is given an adequate opportunity to respond. *See Elwakin v. Target Media Partners Operating Co. LLC*, 901 F. Supp. 2d 730, 745–46 (E.D. La. 2012) (citations omitted).

Under the unique circumstances of this case, the Court will not strike these exhibits or the amended *SUMF*. First, the reply was filed in late May 2025, and no subsequent objection or motion to strike Plaintiff's exhibits has been filed. (Doc. 38.) Second, Plaintiff's version of the facts largely comes from his deposition, which was submitted before this reply memorandum with Plaintiff's opposition to *Defs. MSJ*. (Doc. 36-1.) Thus, the reply (and deposition attached to it) raised no new issues. Third, Defendants were already in possession of Byrd's employment manual. And fourth, and most critical to the Court, the Court finds that this motion largely turns on the evidence submitted by *Defendants* and the questions of fact that arise from that evidence. As a result, Defendants suffer no prejudice from this submission, and it ultimately has little if any effect on the outcome of the motion. Phrased another way, the parties are fighting over an unimportant issue.

## B. Defenses Regarding Liability

### 1. *Qualified Immunity*

#### a. Parties' Arguments

Plaintiff first seeks summary judgment on Defendants' defense of qualified immunity. (Doc. 31-2 at 4.) Plaintiff argues that qualified immunity rarely applies in the context of excessive force claims under the Eighth Amendment, and it does not apply in this case either. (*Id.*) Plaintiff

recaps his version of the facts before asserting that qualified immunity does not apply to state law claims either. (*Id.* at 5–7.) Plaintiff then turns to the federal claims, citing several cases where qualified immunity was denied to a defendant on a motion for judgment on the pleadings or when the defendant submitted no evidence to refute Plaintiff's allegations. (*Id.* at 7–9.) Similarly, because, says Plaintiff, he was unjustly beaten, Plaintiff is entitled to partial summary judgment on the qualified immunity defense. (*Id.* at 9–10.)

In response, Defendants make some irrelevant points[3] before arguing that qualified immunity remains applicable to Plaintiff's federal claims. (Doc. 37 at 4.) According to Defendants, Plaintiff has no evidence while, conversely, Defendants submit Byrd's affidavit to contradict Plaintiff's account. (*Id.*) Thus, the Court should reject Plaintiff's arguments. (*Id.* at 5.)

Plaintiff replies that (1) there is no qualified immunity under Louisiana state law for a battery nor does it affect *respondeat superior* for a battery, and (2) Plaintiff's account of what happen shows there is no qualified immunity. (Doc. 58 at 2–3.)

b.  <u>Applicable Law</u>

"Qualified immunity shields government officials performing discretionary functions from civil damages liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Crittindon v. LeBlanc*, 37 F.4th 177, 185 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 90 (2023) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Determining whether an officer is entitled to qualified immunity requires a two-step inquiry. First, we ask whether the officer's alleged conduct has violated a federal right. Second,

---

[3] Defendants argue first that qualified immunity is available as a corollary to a claim under Louisiana's version of the Eighth Amendment, La. Const. Art. I, § 20. (Doc. 37 at 3.) Next, Defendants then pound that Plaintiff only asserts a claim of vicarious liability against the state for battery. (*Id.* at 4.) As Plaintiff points out in reply, he makes no claim under the Louisiana constitution. (Doc. 38 at 2.)

we ask whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Id.* at 185–86 (cleaned up). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the first prong, this Court has recognized:

> A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

> The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding this, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

*Locklear v. Warden*, No. CV 22-894-JWD-SDJ, 2023 WL 5814401, at *3 (M.D. La. Aug. 8, 2023), *report and recommendation adopted,* No. CV 22-894-JWD-SDJ, 2023 WL 5811248 (M.D. La. Sept. 7, 2023).

As to the second prong, "[i]n determining what constitutes clearly established law, [the Fifth Circuit] first looks to Supreme Court precedent and then to [its] own." *Crittindon*, 37 F.4th at 186 (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). "When there is no direct controlling authority, [the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* (quoting *Shumpert*, 905 F.3d at 320 (internal quotation marks and citation omitted)). "Ultimately, the touchstone is 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* (quoting *Shumpert*, 905 F.3d at 321 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002))).

Nevertheless, "[t]o be clearly established, a right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Courts "do not require plaintiffs to identify a case 'directly on point,' but the case law must 'place[ ] the statutory or constitutional question *beyond debate.*'" *Id.* (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

c.  <u>Analysis</u>

Having carefully considered the matter, the Court will deny *Pl. MSJ* on this issue as moot. First, Defendants concede that they do not have qualified immunity for the battery claim. (Doc. 37

at 4 ("While qualified immunity may not apply to the particular state law claims that Plaintiff has now limited himself to, the defense remains applicable as to Plaintiff's federal claims.").) Thus, Plaintiff seeks summary judgment regarding a state law affirmative defense that Defendants are not asserting.

Second, as to the federal claims, and contrary to Plaintiff's position, it is his burden to show that qualified immunity does not apply. *See McClelland*, 63 F.4th at 1005 (citations omitted). "If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure (that is, beyond doubt) all of the essential elements of the claim or defense to warrant judgment in his favor." *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 334 (M.D. La. 2022) (deGravelles, J.) (cleaned up). That is,

> In contrast, if the movant bears the burden of proof on a claim at trial, then its burden of production is greater. It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing. If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.

*Id.* at 335 (quoting 10A Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2727.1 (4th ed. 2022)).

Plaintiff cannot meet that burden on the record currently before the Court. According to Byrd's affidavit, he applied force to Sam only after Sam refused multiple times to subject himself to a search and only to obtain compliance for same. (Bryd Aff. ¶¶ 3–8, Doc. 37-2.) Moreover, a reasonable juror could conclude that the force used by Byrd—bringing Sam to the ground to place him in mechanical restraints—was reasonable under the circumstances and not done maliciously and sadistically to inflict harm. (*Id.* ¶¶ 8–10.) As Byrd testified, "[a]t no point in [his] interaction

with . . . Sam on December 5, 2021, did [Byrd] punch him or otherwise strike him with [his] fist or any other implement." (*Id.* ¶ 15.)

A reasonable juror could also find that any injury to Byrd was *de minimis*. Again, Byrd attests, "[a]t no point in [his] interaction with . . . Sam on December 5, 2021, did [Byrd] observe any physical injury to him, and he did not voice any complaint of injury to [Byrd.]." (*Id.* ¶ 14.) Likewise, Sam's medical records from the day of the incident show that the provider reported no bruising, swelling, or trauma. (Doc. 37-3 at 4.) Thus, under Byrd's version of events, the *Hudson* factors weigh in Defendants' favor.

In sum, Plaintiff has not established that every reasonable jury would conclude that Plaintiff is not entitled to qualified immunity. Plaintiff's maintenance of this motion after Byrd's affidavit was submitted borders on frivolous. Consequently, *Pl. MSJ* will be denied on this issue.

### 2. Good Faith, Denial of Liability, and Comparative Fault

#### a. Parties' Arguments

Plaintiff next argues he is entitled to summary judgment on the above defenses. (Doc. 31-2 at 10.) "A denial of a fact is not an affirmative defense." (*Id.*) Good faith, Plaintiff says, is also not a legal ground for immunity. (*Id.*) Next, comparative fault is not a defense for constitutional violations. (*Id.*) Alternatively, Plaintiff was not negligent, and Byrd cannot prove that he was. (*Id.* at 11.)

Defendants respond first that Plaintiff provides no legal basis for his position that a general denial is not a valid affirmative defense. (Doc. 37 at 5.) Further, "good faith" is a recognized defense that is "merely another way of invoking qualified immunity specific to state constitutional claims." (*Id.*) Plaintiff did not disclaim any possible state constitutional claims until after the

Defendants filed their answer. (*Id.*) As to comparative fault, Byrd notes that Plaintiff made a claim under Louisiana state law, so comparative fault is a viable defense. (*Id.* at 6.)

In reply, Plaintiff reiterates that a denial of a fact is not an affirmative defense. (Doc. 38 at 3–4.) Likewise, Plaintiff says that Defendant has not offered factual support for his comparative fault defense.

### b.  Law and Analysis

Having carefully considered the matter, the Court will deny Sam's motion. As to the denial of liability, the Court finds persuasive Magistrate Judge Bourgeois's opinion in *Cayette v. PNK (Baton Rouge) P'ship*, No. CV 15-692-SDD-RLB, 2016 WL 3579028, at *3–4 (M.D. La. May 19, 2016), *report and recommendation adopted,* No. 15-692-SDD-RLB, 2016 WL 3582082 (M.D. La. June 28, 2016). There, plaintiffs moved to strike certain affirmative defenses, including one that the plaintiff's claims were barred "to the extent that they impose upon [defendant] obligations for which [defendant] is not legally responsible." *Id.* at *3. Plaintiffs argued that "intervening/superseding causes, events, or the acts of third persons do not provide a defense to federal disability access claims." *Id.* Defendant replied that it intended the defenses to have a "broader reach than third-party liability" and that it could mean other bases for which defendant was not liable under Title III of the ADA. *Id.* Plaintiff responded that the defense was "incredibly broad and vague" and that defendant should be forced to clarify its meaning. *Id.* at *4.

The magistrate judge recommended that the motion be denied, explaining:

> This asserted defense is not a true affirmative defense as those listed in Rule 8(c), as it solely asserts that Plaintiff's claims are legally insufficient to the extent Defendant is not "legally responsible" for the claims asserted. While mislabeled as an "affirmative defense," the inclusion of this broad denial of liability as an "affirmative defense" is merely redundant of Defendant's denials of liability and does not prejudice Plaintiff. The "drastic remedy" of striking this asserted defense is unwarranted. *See Nickens v. State Employees*

> *Credit Union, Inc.*, No. 13-1430, 2014 WL 3846060, at *3 (D. Md. Aug. 4, 2014) (denying motion to strike asserted affirmative defense that the "Defendants are not legally responsible for any injuries or damages allegedly sustained by Plaintiff about which she complaints" under the heightened pleading standard of *Twombly* and *Iqbal*).

*Id.*

The same reasoning applies here. While Defendants technically erred in describing this as an affirmative defense, Sam suffers no prejudice, and granting summary judgment on this issue merely invites confusion for trial, where Defendants will be allowed to offer evidence contesting liability. As a result, Sam's motion on this issue is denied.

Plaintiff's motion is also denied as to the affirmative defense of "good faith." First, this defense is simply redundant to the qualified immunity defense asserted by Plaintiff. In that respect, the inclusion of this redundant defense is harmless, and granting summary judgment on it merely invites confusion. Second, to the extent this defense was meant to address claims for violation of the state constitution, the record is clear now that no such claims are asserted. Thus, the motion can be denied as moot on that basis.

Finally, as to comparative fault, Plaintiff claims (1) this defense cannot apply to federal constitutional claims, and (2) Defendants have no proof to support it. But Defendants do not argue comparative fault for the federal constitutional claims, and, under Byrd's version of the facts (summarized above), Plaintiff was jointly at fault for causing his injuries by, inter alia, failing to comply with orders. Thus, Plaintiff's motion on this issue is denied as well. Again, Plaintiff's motion borders on frivolous, and is certainly a waste of judicial and party resources.

### 3. *Discretionary Immunity*

#### a. Parties' Arguments

Plaintiff next argues that Byrd's battery is not subject to the discretionary immunity of La. R.S. § 9:2798.1 because (a) it is not based on policymaking or discretionary acts and (b) the immunity does not apply to malicious acts. (Doc. 31-2 at 11.) Because the assault occurred at the operational level, and not at the policymaking level, Byrd is not immune under this statute. (*Id.* at 11–12.)

In response, Defendants contend that discretionary immunity applies to operational acts and ministerial or policymaking acts. (Doc. 37 at 7.) Rather, the statute "bars negligence claims against governmental employees whenever the act complained of is one in which the governmental employee had discretion to act and the action taken was within the employee's lawful power." (*Id.* (citation omitted).) Correctional officers like Byrd have the lawful authority to use force, and they have the discretion to determine the appropriate amount of force to apply. (*Id.*) Byrd's affidavit demonstrates that he exercised that discretion properly. (*Id.*)

Plaintiff responds that La. R.S. § 9:2798.1 is inapplicable as a matter of law. (Doc. 38 at 4–6.) Plaintiff quotes at length the statute and an Eastern District of Louisiana case on this issue. (*Id.* (citations omitted).)

#### b. Law and Analysis

The Louisiana Supreme Court recently summarized the law governing La. R.S. § 9:2798.1 as follows:

> The doctrine of discretionary immunity is set forth in La. R.S. 9:2798.1 B, which provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." We explained

the application of the discretionary act doctrine in *Cormier v. T.H.E.*
*Ins. Co.*, 98-2208, pp. 6-7 (La. 9/8/99), 745 So. 2d 1, 6-7:

> [ ] the court must first consider whether the
> government employee had an element of choice and
> his course of action was not specifically prescribed
> by the statute, regulation, or policy. Conduct cannot
> be discretionary unless it involves an element of
> judgment or choice. Thus, discretionary immunity
> will not apply when a specific course of action
> is prescribed as the employee has no rightful option but
> to adhere to the directive. On the other hand, when
> discretion is involved, the court must then determine
> whether that discretion is the kind shielded by the
> exception: one grounded in social, economic, or
> political activity . . . If it is, then the doctrine applies
> and the employee or agency is insulated from
> liability; if it is not, the employee or agency is liable
> for any negligence.

(Citations omitted)

*Misita v. Maumoulides*, 2022-00266 (La. 4/26/22), 336 So. 3d 886, 887 (per curiam).

Here, even construing the facts in evidence in a light most favorable to Bryd, the Court
finds that Sam is entitled to partial summary judgment on this issue. While Byrd's decision in how
to respond to Sam was certainly discretionary, no reasonable juror could conclude that his
decisions were rooted in "social, economic, or political activity."

The Court finds persuasive *Disedare v. Brumfield*, No. CV 22-2680, 2024 WL 1092833,
at *1 (E.D. La. Mar. 13, 2024), *opinion vacated in part on reconsideration*, No. CV 22-2680, 2024
WL 1514650 (E.D. La. Apr. 8, 2024). There, "Plaintiff alleges that over a four-day period in March
2021, the Defendant officers, suspecting Plaintiff had stored contraband in his rectum, repeatedly
ordered him to ingest laxatives, perform bowel movements in full restraints, submit to strip
searches, and undergo x-rays." *Id.* "No contraband was found[,]" and plaintiff filed suit bringing
claims under § 1983 and Louisiana law for negligence. *Id.* Defendants argued they were entitled

to discretionary immunity for the state law claims, but the district court rejected this. *Id.* at 13–15.

Judge Morgan wrote:

> The immunity statute does not protect operational governmental decisions, but only confers immunity for discretionary decisions based on social, economic, or political concerns. In other words, when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures. Thus, for Defendants to prevail on summary judgment, they must demonstrate their conduct was consistent with the course of action prescribed by a policy or, absent a policy on point, was discretionary and grounded in a social, economic, or political policy, by citing to materials in the record for support.
>
> In this case, Defendants failed to satisfy their burden because they included no statements of undisputed material fact demonstrating their conduct complied with any specific policy or procedure that prescribes a course of action. Nor did they include statements of undisputed material facts demonstrating they exercised reasonable discretion with respect to a specific social, economic, or political policy that involved choice or discretion. Instead, Defendants merely made conclusory assertions that the Defendant officers "followed DPSC policy and procedures when investigating Plaintiff, which included the use of a visual body cavity search, body scanner scans, and the placement on dry cell restrictions."

*Id.* at *15 (cleaned up). *Cf. Murray v. LeBlanc*, 629 F. Supp. 3d 437, 466 (M.D. La. 2022) (deGravelles, J.) (dismissing claims against secretary of DOC for "contracting and working with Lasalle and similar institutions" because "any fair reading of the pleadings shows that his conduct was grounded in 'social, economic, or political policy.'").

The same reasoning applies here. Bryd has not identified a policy that prescribed a course of conduct, and, even construing the facts in a light most favorable to him, his conduct was not rooted in policy. As a result, the Court will grant Sam partial summary judgment on the question of Bryd's entitlement to discretionary immunity under La. R.S. § 2798,1.

### C. Defenses Regarding Damages

#### 1. *Failure to mitigate*

Plaintiff next moves for summary judgment on Defendants' failure to mitigate damages defense. (Doc. 31-2 at 11.) Plaintiff claims there is no proof that he refused treatment. (*Id.*) Further, Sam was incarcerated, so he had no choice but to use LSP for medical care. (*Id.*)

Defendants respond that, even if Plaintiff had limited resources available for treatment, he still had an affirmative duty to reduce his damages. (Doc. 37 at 6.) Defendants cite Plaintiffs medical records, specifically how (a) Plaintiff didn't seek treatment until three days after the incident, and only then after another confrontation with a chemical agent; (b) Plaintiff did not seek follow up medical attention for days; and (c) "he failed to avoid subsequent confrontations within a week of the incident." (*Id.*)

Plaintiff replies, "Defendants offer only the medical records, which only show the dates upon which medical treatment was afforded. There is no competent proof offered into the record that Plaintiff was not requesting medical treatment or that he otherwise failed to mitigate." (Doc. 38 at 4.)

Having carefully considered the matter, the Court will deny Plaintiff's motion on this issue. Again, according to the medical records in evidence, Plaintiff received treatment on the day of the incident, but he was not seen again until December 8, 2021, (3 days later), during which time he got "beat up" and "hit in the eye," and he had "bruising" and "swelling." (Doc. 37-3 at 3.) Plaintiff was then seen again on December 11, 2021, at which time he showed 0 visible signs of trauma and "refused to be assessed" and "voice[d] no medical complaints at this time." (*Id.* at 2.) Considering these facts, a reasonable jury could easily conclude that Plaintiff failed to mitigate his damages. Plaintiff is not entitled to partial summary judgment on this issue.

### 2. *Statutory Cap under La. R.S. § 13:5106 and La. R.S. § 13:5112.*

#### a. Parties' Arguments

Plaintiff next argues that he is entitled to summary judgment on Defendants' eighth affirmative defense, which invokes the statutory limitation of damages contained in La. R.S. § 13:5106 and § 13:5112. (Doc. 31-2 at 13.) Plaintiff argues that these statutes conflict with § 1983 and thus with the Supremacy Clause of the Constitution. (*Id.*) As a result, these state statutes cannot limit Plaintiff's federal claims. (*Id.* at 13–14.)

Defendants reply that there is no violation of the Supremacy Clause. (Doc. 37 at 8.) Plaintiff's only claim against the State is vicarious liability for state law claims, so the statutory cap conflicts with no federal law. (*Id.* at 8–9.)

Plaintiff responds, "Defendants have offered no jurisprudence that allows a state court cap to apply in federal court. As a matter of the law the cap does not apply in federal court." (Doc. 38 at 6.)

#### b. Law and Analysis

Having carefully considered the matter, the Court will deny Plaintiff's motion on this issue. Louisiana Revised Statutes § 9:5106 provides:

> B. (1) The total liability of the state and political subdivisions for all damages for personal injury to any one person, including all claims and derivative claims, exclusive of property damages, medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed five hundred thousand dollars, regardless of the number of suits filed or claims made for the personal injury to that person.

La. R.S. § 13:5106(B)(1). Thus, Section "5106(B)(1) caps the liability for . . . the State at $500,000.00." *Sahota v. Cobb*, No. CIV.A. 14-2722, 2015 WL 6835480, at *3 (W.D. La. Nov. 6, 2015), *judgment entered*, No. CIV.A. 14-2722, 2015 WL 6830755 (W.D. La. Nov. 6, 2015).

"Section 13:5112 sets the time for accrual and rate of legal interest on any personal injury claim against a political subdivision of the State" or the State. *Id.*

The Supremacy Clause of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding.

*Id.* (quoting U.S. Const. art. VI, cl. 2). As the Western District has explained:

> It has long been established that "a state statute is void to the extent that it actually conflicts with a valid federal statute"; said conflict is found where compliance with both federal and state law is impossible or if the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* at *4 (quoting *Edgar v. Mite Corp.*, 457 U.S. 624, 631 (1982). Thus, Plaintiff is correct that applying these statutes to his § 1983 claim would run afoul of the Supremacy Clause. *See id.* (granting plaintiff's motion for partial summary judgment on defenses under La. R.S. §§ 13:5106 and 13:5112).

However, Defendants make clear that this defense applies only to Plaintiff's state law claims, and the Court is satisfied with that. *See Asante-Chioke v. Dowdle*, No. CV 22-4587, 2024 WL 2863379, at *5 (E.D. La. June 6, 2024) (Barbier, J.) (denying motion to strike this defense because, "Although Defendants' answers do not specify that these defenses apply to Plaintiff's state law claims, the notice pleading requirement for affirmative defenses does not require such specificity.").

Plaintiff argues that Defendants have failed to show how this law applies in federal court, but the Court disagrees. Rather, the Court finds that Plaintiff has failed to meet her initial summary

judgment burden of showing how a state law can run afoul of the Supremacy Clause when it in no way conflicts with any federal law (like § 1983). Without more, Plaintiff has waived the argument, and on this additional ground, the motion will be dismissed. *See JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.); *Payton v. Town of Maringouin*, No. CV 18-563-JWD-EWD, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022) (collecting authorities).[4]

For all these reasons, Plaintiff's motion for partial summary judgment on this affirmative defense will be denied. The defense remains viable for Plaintiff's state law claims against the State.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment* (Doc. 31) ("*Pl. MSJ*") filed by Plaintiff Kevin Sam is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** in that, as a matter of law, the Court finds that Bryd is not entitled to discretionary immunity under La. R.S. § 9:2798.1. In all other respects, the motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>November 10, 2025</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[4] The Corut notes that, in *Sahota*, the Court does not specify whether this defense is precluded only for the § 1983 claims or whether it is precluded for state law claims as well. *See* 2015 WL 6835480, at *4. The authority cited by *Sahota* refer to § 1983 and Title VII. *Id.* Thus, the Court narrowly construes this ruling. To the extent the Court misreads *Sahota*, the Court opts instead to adopt Judge Barbier's reasoning in *Asante-Chioke*.